UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| CINDY L. WILBURN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 3:10-CV-08 |
| ) | (PHILLIPS/GUYTON) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings [Doc. 11 and 12] and that the Defendant's Motion for Summary Judgment [Doc. 15 and 16]. Plaintiff Cindy Lou Wilburn seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On November 20, 2006,[1] the Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income, claiming a period of disability which began November 1, 2005. [Tr. 25]. After her application was denied initially and also denied upon

---

[1] At the hearing in this matter, the Plaintiff stated that November 1, 2005, was the alleged onset date, but the ALJ noted that the Plaintiff's application stated the onset as November 20, 2006. The ALJ used November 20, 2006, as the onset date in his opinion.

reconsideration, Plaintiff requested a hearing. On June 3, 2009, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 7-18]. On August 28, 2009, the ALJ found that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review; thus the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

> The ALJ made the following findings:
>
> 1. The claimant has not engaged in substantial gainful activity since November 20, 2006, the application date (20 CFR 216.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: fibromyalgia; lower back pain; depression; and anxiety (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except claimant will have some difficulty with extended concentration but still can perform simple and detailed tasks over a full workweek; her ability to concentrate and persist are not significantly limited, and she can adapt to gradual or infrequent changes.
>
> 5. The claimant in unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant was born on November 14, 1965 and was 41 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

2

8. The transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 20, 2006, the date the application was filed (20 CFR 416.920(g)).

[Tr. 27-32].

## II. DISABILITY ELIGIBILITY

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment

3

must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales,

402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Serv.,46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. ANALYSIS

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by: (A) not affording adequate weight to the opinion of Michael Smith, M.D., and (B) not affording adequate weight to or properly discussing the opinions of Edith Smith, M.D. [Doc. 12]. The Commissioner, in response, contends substantial evidence supports the ALJ's disability determination. [Doc. 16].

### A. Michael Smith, M.D.

The Plaintiff first alleges that the ALJ erred by not affording adequate weight to the opinion of Michael Smith, M.D., ("Dr. M. Smith"), who the Plaintiff maintains is a treating physician. Essentially, the Plaintiff challenges the ALJ's finding as to her mental capacity and impairments. [Doc. 12 at 7]. The Commissioner does not dispute that Dr. M. Smith was a treating physician. [See Doc. 16 at 17]. Instead, the Commissioner maintains that the ALJ gave little weight to Dr. M. Smith's opinion because he found it was not supported by Dr. M. Smith's clinical notes and because Plaintiff's medication helped control her symptoms. [Doc. 16 at 17]. The Commissioner maintains that the ALJ's decision regarding the Plaintiff's mental impairments is supported by substantial evidence.

5

If a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2). But where an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R.§§ 404.1527(d)(2) and 416.927(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

In this case, the ALJ reviewed Dr. M. Smith's progress notes at length in his decision. The ALJ discussed both the signs of stability and progress found in Dr. M. Smith's notes and the Plaintiff's diagnosed impairments and "guarded prognosis." [Tr. 28]. In discussing the weight he afforded Dr. M. Smith's opinion and the opinion of other physicians, the ALJ explained:

> The record does contain opinions from treating or examining

> physicians indicating that the claimant is disabled and has limitations
> greater than those determined in this decision, but their opinions are
> not found credible given their clinical records. It appears that she has
> been treated conservatively with prescribed medication including
> psychotropic drugs, which has controlled her symptoms[.]

[Tr. 31, citing, *inter alia*, "Relationship Inquiry" of Dr. M. Smith, Ex. 13F, Tr. 313-17].

At the hearing before the ALJ, the Plaintiff estimated that she had been seeing Dr. M. Smith, at Cherokee Health Systems, since 2002, [Tr. 11], but the record contains only progress notes dated December 7, 2005, through April 9, 2007 and Dr. M. Smith notation's that the Plaintiff has been under his care since 2003. [Tr. 201-209 and 309-313]. Nonetheless, the Court finds that he was the Plaintiff's treating physician, as he was the Plaintiff's own physician and had provided medical treatment as part of an ongoing treatment relationship.

On June 4, 2007, Plaintiff's counsel requested that Dr. M. Smith complete a "Treating Relationship Inquiry," which was supplied by counsel and involves multiple-choice diagnosis of limitations and impairments along with a portion for short explanations. [Tr. 313-317]. The Plaintiff argues that the contents of this "Relationship Inquiry" should have been afforded additional weight. [See Doc. 12 at 7].

Initially, the Court notes that the Medical Opinion forms are questionnaires that require a physician to mark the severity of a functional restriction on a scale that is provided—i.e. patient's capacity to deal with a given situation is "unlimited," "good," "fair," "poor," or "none"—and require the physician to answer a series of yes or no questions. [Tr. 315-16]. At the end of the form, a space is provided for the physician to evaluate full-time placement employment for the claimant. Such an evaluation, without any references to supporting evidence or the rationale behind such restrictions, makes it difficult to determine whether the opinion is well-supported by clinical and laboratory

7

diagnostic techniques, objective tests, or other evidence in the record, 20 C.F.R. § 404.1527(d)(2) and 416.927.

The form supplied to Dr. M. Smith includes twenty-two areas of limitation– *i.e.* "Abilities of Concentration Persistence and Pace," "Understand, remember and Carry out complex instructions." Dr. M. Smith found that the Plaintiff had either fair or poor abilities, in each of the twenty-two areas of impairment/ability. Dr. M. Smith also marked the box to indicate that the Plaintiff could not work 40 hours per week; in support of this assessment, he stated "poor coping [struggles][2] with mood swings, [and] anxiety." [Tr. 314]. Dr. M. Smith attributed the Plaintiff's mental impairments to "Biochemical imbalance/hereditary factors [and] abusive relationships." [Tr. 314]. When asked to supply "any medical/clinical findings that support[ed his] assessment," Dr. M. Smith noted the following, "Anxious/Depressed, Weight/Appetite Fluctuation, Anticipatory Anxiety [and] _____[3]."

After comparing Dr. M. Smith's findings in the "Relationship Inquiry," to his progress notes, the Court concludes that the ALJ's decision to discount Dr. M. Smith's opinion is supported by substantial evidence. While Dr. M. Smith's progress notes evidence anxiety issues, they do not support a finding that the Plaintiff is as poorly equipped for life as Dr. M. Smith's responses in the "Relationship Inquiry" would indicate. For example, Dr. M. Smith indicated in the "Relationship Inquiry" that the Plaintiff had only "poor" abilities to relate to peers, deal with the public, work at a consistent pace, maintain attention, etc., [Tr. 316]. However, in his progress notes from the months before he filled out the "Relationship Inquiry," Dr. M. Smith noted that the Plaintiff was:

---

[2]This word is illegible, but the Court has surmised from its context that the word is "struggles."

[3]This word is illegible.

"excessively busy with her schedule and running her 7-year-old daughter here and there," "tolerating her medication well," going to counseling at her church, and had "no specific complaints aside from the usual grief [from] . . . the loss of her daughter." [Tr. 309-10].

Further, the impairments identified by Dr. M. Smith in the "Relationship Inquiry" are inconsistent with other evidence in the record. For example, William Kenney, Ph.D., an examining source, found that the Plaintiff's ability to understand and remember was not significantly limited, her ability to interact socially was not significantly limited, and her abilities to concentrate, persist, and adapt were limited, but not severely. [Tr. 260].

Accordingly, the Court finds the ALJ's conclusion that Dr. M. Smith's opinions regarding the Plaintiff's ability to work and her functional impairment were not credible because of their clinical records is supported by substantial evidence. Moreover, the Court finds that the ALJ explained sufficiently the weight afforded to Dr. M. Smith's opinion.

Notwithstanding the above analysis, the Court also notes that disability determinations are reserved for the ALJ. Blanket statements, like Dr. M. Smith's statement that the Plaintiff's "mental conditions significantly impair her ability to work," [Tr. 313], are legal determinations which fall solely within the ALJ's domain. In the context of Social Security, a disability determination ultimately turns upon whether work that accommodates a claimant's residual functional capacity and vocational factors exists in the national economy, not whether the claimant can resume her previous work or other work known to a physician. See Walters, 127 F.3d at 529. While medical observations, opinions, and treatments are well within the physician's expertise, the analysis of the claimant's legal disability falls within the ALJ's professional, legal expertise and, accordingly, the disability determination is reserved for the ALJ's judgment. See SSR 96-5p, 61 Fed. Reg 34471,

34472.

**B.    Edith Smith, M.D.**

The Plaintiff also alleges that the ALJ erred by not "addressing" and affording adequate weight to the opinion of Edith Smith, M.D., ("Dr. E. Smith"). Specifically, the Plaintiff argues that the ALJ should have afforded more weight to Dr. E. Smith's opinion that the Plaintiff could lift only 20 pounds occasionally and 10 pounds frequently and her opinion that the Plaintiff would require frequent breaks in an 8-hour day.

The Commissioner acknowledges that the ALJ's statements about the weight afforded to Dr. E. Smith's statements are "somewhat unclear," but the Commissioner maintains that the ALJ intended to "give some weight to Dr. E. Smith's assessment and opinion, but only to the extent that she indicated limitations consistent with medium work." [Doc. 16 at 21-22].

Dr. E. Smith examined February 1, 2007, and found:

> Based on cumulative factors she should be able to sit for 3-4 hours in an 8 hour day with frequent breaks, stand or walk for 3-4 hours in an 8 hour [day] with more frequent breaks than normal or as needed. Occasionally lift from standing 20 pounds, frequently lift 10 pounds.

[Tr. 265].

Ultimately, the ALJ found that the Plaintiff had the residual functional capacity to preform medium work, which "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds," 20 C.F.R. § 404.1567(c), with additional mental limitations. In discussing the weight afforded to Dr. E. Smith and other non-examining physicians, the ALJ explained:

> As for the opinion evidence, the undersigned gives great weight to the opinion of the DDS reviewing physicians regarding her physical and mental impairment and limitations, and to the opinion of the

> consultative examining physicians, although they opined a lower residual functional capacity. The residual functional capacity accommodates their assessments and/or opinions.

[Tr. 31].

The Plaintiff argues that, despite the ALJ's statement that he afforded "great weight" to Dr. E. Smith's opinion, the ALJ did not incorporate Dr. E. Smith's weight limitations or her opinion that the Plaintiff would require frequent breaks. [Doc. 12 at 12]. The Plaintiff also notes that when the ALJ asked the vocational expert to assume a person with the physical limitations identified by Dr. E. Smith, the vocational expert responded that such a person could return to many jobs. However, the vocational expert stated that he doubted if such a person would "be able to hold on to a job because she would not, most employers would not give her more breaks than, than typical." [Tr. 16].

The Commissioner directs the Court to the opinions of Frank Pennington, M.D., and Michael Ryan, M.D., two non-examining physicians. [Doc. 16 at 21]. Both Dr. Pennington and Dr. Ryan concluded that the Plaintiff could: occasionally lift and carry 50 pounds, frequently lift and carry 25 pounds, stand for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. [Tr. 287 and Tr. 322].

Though the opinions of examining physicians are not entitled to as great a weight as those of treating physicians, the ALJ must, nonetheless, explain the weight given to opinions of examining sources. See 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii) ("the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources . . . .").

Pursuant to the applicable statutes, the ALJ is to "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(d)(1); 416.927(d)(1). As the Court of Appeals has explained, "[i]n the hierarchy of opinions, the opinion of a non-examining physician is entitled to the least weight," Grecol v. Halter, 46 Fed. App'x. 773, 775 (6th Cir. 2002), because a non-examining physician lacks first-hand knowledge of the claimant's condition. Nonetheless, "a non-examining physician's opinion may be accepted over that of examining doctors when the non-examining physician clearly states the reasons for his differing opinion." Carter v. Comm'r of Soc. Sec. 36 Fed. App'x. 190, 191 (6th Cir. 2002).

In this case, the ALJ has afforded more weight to the opinions of non-examining physicians than to those of Dr. E. Smith, an examining physician. Neither the ALJ nor the non-examining physicians provided an explanation for granting less weight to the examining opinion of Dr. E. Smith. Both non-examining physicians made a bare assertion that the opinions of the treating and examining physicians in the record were too restrictive, but they made no references to objective evidence or clinical findings to support this conclusion. [Tr. 292 and 327].

Thus, after considering the above facts and law along with the evidence in the record, the Court finds that the Plaintiff's request for remand on the issue of the weight afforded to Dr. E. Smith's opinion is well-taken. The Court recommends remanding this case for further consideration of Dr. E. Smith's opinion, specifically, the weight limitations and break requirements Dr. E. Smith opined were necessary. If the ALJ does not afford Dr. E. Smith's opinion weight consistent with her status as an examining physician on remand, the ALJ should provide an appropriate explanation for the weight afforded to the opinion.

## V. CONCLUSION

Accordingly, it is hereby **RECOMMENDED**[4] that the Plaintiff's Motion for Judgment on the Pleadings **[Doc. 11]** be **GRANTED IN PART** and **DENIED IN PART** and that the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED IN PART** and **DENIED IN PART**. The Court finds that substantial evidence supports the ALJ's findings as to the Plaintiff's mental capacity, but as more fully explained above, the undersigned **RECOMMENDS** that this case be **REMANDED** to address Dr. E. Smith's opinion regarding the Plaintiff's physical capacity.

Respectfully submitted,

s/ H. Bruce Guyton
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).